JOHN M. HAMILTON et al. *v.* SAMUEL MOORE et al.

1. NEW TRIAL: WHEN GRANTED BY A COURT OF EQUITY.—A court of equity will never grant a new trial at law, where the party who seeks it might, by ordinary diligence, have had a fair trial in the court at law.
2. SAME.—When a trial was had at law, upon an agreed state of facts, which, by mutual mistake of both parties and the draftsman of the agreement, was made to embrace a material fact, which did not in truth exist, whereby a judgment was rendered against the defendants, and afterwards affirmed in the High Court of Errors and Appeals, it will then be too late for the defendants to apply to a court of equity for a new trial, for the reason that the parties might, by the exercise of ordinary diligence, have discovered the mistake before the adjournment of the court in which the cause was tried, and have applied then for a new trial.

APPEAL from the Chancery Court of Carroll county. Richard Nelson, Esq., presiding as special judge.

On the 3d day of June, 1856, Samuel Moore and seven others, who were the sureties of one William P. Bole on his official bond, as sheriff and tax-collector of Carroll county, filed their bill in the court below against John J. M'Rae, Governor of this State, and successor in office to H. S. Foote, and also against John M. Hamilton and others, members of the Board of Police of said county. The object of the bill was to procure a new trial at law, in a cause wherein H. S. Foote, Governor, &c., had recovered judgment against the complainants for the use of the county aforesaid.

The substance of the bill is as follows:—That the said Board of Police instituted an action against them in the Circuit Court of Carroll county, to recover the sum of $2180, which, it was alleged, was due by said William P. Bole, as tax-collector of said county, for the collection of taxes in the year 1850. That the said complainants, who were the sureties of said Bole on his official bond, resisted said suit upon the ground, that there had been no legal assessment and levy of the county taxes for the year 1850; that when said cause came on for trial, the same was submitted to the court upon demurrer, and upon an agreed state of facts, (for which see *Moore* v. *Foote*, ante, 469.) That the Circuit Court rendered judgment against them for $2180, with interest, and they sued out a writ of error thereto, and the judgment was affirmed at the

VOL. III.—40

December Special Term, A. D. 1855, of the High Court of Errors and Appeals.

The bill further stated, "that said agreed state of facts does not contain a true and correct statement of the real facts of the case. That the said agreement was intended by both parties to embrace them fully and clearly, but, by mistake of the draftsman, said agreement admits that the order of the Board of Police of Carroll county, levying the taxes for the year 1850, was placed in the hands of the said tax-collector, and was in his possession, with the assessment roll for that year, when he collected said taxes." The bill further alleged, that the said admission was erroneous, and that a copy of such order had never been placed in the possession of the said tax-collector, as was by mistake admitted in said agreed state of facts; and that, by mutual mistake of both parties to said suit, and of the draftsman of said agreement, the admission aforesaid was embraced therein. That the fact so embraced by mistake in said agreement, was not pretended by either party, to exist at the time. That neither party intended or desired to make such supposed fact the basis or ground of any claim or defence. That the counsel for the county, who then represented and still represents the said county of Carroll, freely admit that no such statement or admission was intended to be embraced or included in said agreed state of facts, and that both were equally surprised when it was decided by the said High Court, that said agreement did contain such admission.

The bill then set out the facts, as they were intended by both parties to be embraced in said agreement, excluding the admission in relation to the order of the Board of Police being in the possession of the tax-collector. The bill further alleges that they had suffered injury on account of said mistake, in having a judgment rendered against them for $2180, and that on another trial, they could show that the said order of the Board of Police was never in possession of the said tax-collector, and prayed that a new trial be granted to them.

The Board of Police appeared and filed a general demurrer to the bill, which was overruled, and leave given them to answer. From this decree they appealed.

*Helm* and *Wright*, for appellants.

This cause (under the style of *H. S. Foote, Gov.*, v. *Samuel Moore et al.*,) was before this court some twelve months ago, upon a writ of error sued out by defendants, when a judgment was rendered by this court, affirming the judgment of the court below against them.    They thereupon filed this bill on the chancery side of the Circuit Court, asking that a new trial, at law, be granted them; alleging as reasons, that the agreed state of facts upon which the former case was submitted, embraced more than was intended; in this, that it appears to be admitted by the agreement that the orders made by the Board of Police, authorizing the collection of the taxes and levying the same, for that year, were in the hands of the tax-collector.    It is true, that this was not intended to be admitted; and granting the truth of this position, we still contend that this does not affect, or in any wise change the grounds upon which this case was decided by this court.    It is admitted that the orders were made by the Board of Police and received, and were filed with the bill.    The sheriff was the officer of that court; it is to be presumed that he acted under its orders and by its direction. It is not material how he learned his duty; he may have read the orders from the minutes of the court.    It will not be contended that it is necessary that the sheriff should have a copy of the order of the court, commanding him to collect the taxes in order to render his acts valid.    This would only be necessary in case the law permitted the tax payer to challenge his authority, when it might then be required to establish that.    Nor does the law require that the clerk should issue it to him, and make a record of that fact, which would be necessary were it a precedent condition to the legal right to collect.    To make this plain, suppose it to be absolutely true that the clerk had issued the order and delivered it to the collector, and he had collected the taxes, and in the lapse of time the order had been lost or mislaid, and the clerk should be unable to remember the fact of issuing and delivery; and before payment of the taxes by him into the treasurer's hands, some of the tax payers should contend that the money should be refunded to them for the reason that it had been obtained without authority of law—would this court regard such a claim for one moment?  If, then, it would not listen to the tax payer, whose money has been

taken from him and which can only be done in strict accordance with law, much less will it regard such a reason when urged by those who have received the money and refused to account for it.

No formal order is required. The collector acted under the authority and order made by the court, and did what it commanded: it will therefore be presumed that he knew of its existence, and acted in obedience to it.

The case of *The State* v. *Brown,* decided at this term of the court, is, we think, conclusive upon this point. In that case it seems that the prisoner, against whom an indictment was pending, had been brought before the court on the question of bail, the court granted the bail, and ordered the sheriff to take the bond, which he did; the sureties endeavored to quash the proceedings on the ground that no formal order was in the hands of the sheriff, authorizing him to take any such bond, it was decided that none was necessary.

But we deem it unnecessary to refer to any other decisions than the one delivered by this court in this cause, some twelve months since. This opinion is a clear and forcible exposition of the principles involved in this cause, and is conclusive upon the point now at issue. We here insert that portion of the opinion bearing upon the point at issue.

"The term levy imports the ascertainment of the amount necessary to be raised for the county taxes, and the performance of such acts, by the Board of Police, as would authorize the tax-collector to proceed to collect the taxes. Under the admission in the pleadings, that the Board legally made them, it must therefore be taken that they fixed the amount to be raised, and took such other steps as were necessary to authorize the tax-collector to make collections; because, otherwise there could not have been a legal levy of the amount of taxes. The admissions of the pleadings and agreement would go to the extent of admitting the authority of the tax-collector to collect, so far as his authority was dependent upon acts to be done by the Board of Police, only denying that the amount of county taxes was assessed in the assessment list. It is not material to conjecture how the amount required to be collected was communicated to the tax-collector; but it may well be presumed that it was by an order of the Board of Police requiring

him to collect a certain per centum upon the amount of State taxes."

Now this court here expressly decides that it is not material to conjecture how the amount required to be collected, was communicated to the tax-collector. One thing is certain, and admitted, that he did collect the amount ordered by the Board to be collected, and the inference is irresistible, that he knew what that was. It is admitted that the Board legally made the levy of the taxes, that the collector collected the amount levied, it must then, (in the language of the court,) be taken that they fixed the amount to be raised, and took such other steps as were necessary to authorize the collector to make collections. (See the orders of the Board filed with the record.) The only difference between this and the former case is, that it is not admitted that any order was in the collector's hands.

As to the granting of a new trial, we will merely refer the court to the cases of *Thompson* v. *Williams*, 7 S. & M. 270; *Leggett* v. *Morris*, 6 Ib. 723.

*Fulton Anderson*, for appellees.

This is an appeal from a decision of the judge of the Circuit Court of Carroll county, sitting in chancery.

The bill was filed to obtain a new trial at law, in the case of *The Governor, &c.*, v. *Samuel Moore et al.*, which was decided against appellees at the ———— Term of the Circuit Court of said county of Carroll, and the judgment affirmed at the last term of this court.

The judgment in the Circuit Court was rendered in a suit of the governor against the appellees, as sureties on the tax-collector's bond of Carroll county, for a default of said tax-collector in paying over the county taxes of the year 1850. The defence at law was, that there was no legal assessment of county taxes for that year, and the case was decided upon an agreed state of facts, on which agreed state of facts the Circuit Court at law decided against the appellees in this case, and its judgment was affirmed.

The bill in this case alleges, that in the agreed state of facts, by a mistake of the draftsman, the true agreement of the parties was not stated. That the true agreement of the parties was not

only that there was no mention in the assessor's roll on which the said taxes were pretended to be collected, of the county tax of said year, but that there was no roll, or record, or order of the Board of Police of said county levying said county tax, in the hands of said collector, nor any other paper or statement in his possession, in relation to said county taxes. That the failure to make this fact apparent and full in the said agreement, was by a mistake of the draftsman of the same, and that such was the true state of facts is admitted, and that the appellants and counsel so understood the agreement at the time, and so understand it now.

But it appears that by the construction placed upon said agreement, by this court, it was held to admit that there was such an order of the Board of Police in the hands of the tax-collector.

The bill alleges, that, by this mistake, the appellees were impaired in their rights, and that the judgment ought to have been different, if the said agreement had been truly drawn, wherefore it prays a new trial, &c.

To this bill there was a demurrer, which was overruled, and the defendants appealed to this court.

I presume it will not be denied, that if there was a material mistake in the draft of the agreement, so as that it did not express the true agreement of the parties, in a matter essential to the rights or interests of either, a court of equity has jurisdiction to reform it, and to order a new trial.

The question then is, whether the mistake was material? It will be seen, by referring to the decision of the case at law by this court, that the mistake was a material one. The court, in its opinion, assumed that the order of the Board of Police levying the county tax, was in the hands of the tax-collector, and held thereon the following language:—"When the rate of county taxes is fixed at a certain per centum upon the State taxes, which are specified in the assessment rolls, it is a mere matter of computation what amount each tax payer shall pay, which he" (meaning the tax payer) " can readily make, having the *right to examine the assessment roll*, to ascertain the amount of the State tax, and the *order* of the Board of Police *fixing* the rate of county taxes, *both of which must be in the hands of the tax-collector*. No injury, therefore, can arise to the tax payer by reason of the uncertainty in

Hamilton et al. *v.* Moore et al.

the amount of his taxes. All the means of rendering the amount certain, are subject to his examination, when he comes to pay his taxes. And the matter does not, therefore, appear to be different in principle from an execution in the sheriff's hands requiring him to levy a specified sum of money, with interest, from a stated time until paid, which could not be pretended to be void for uncertainty, as to the amount due for interest."

We submit that the above extract from the court's opinion, shows clearly the materiality of the mistake in the draft of the agreement.

The mere *levy* of a tax by the Board of Police, no more imports a liability on the part of the tax payer, than does an act of the legislature levying a tax; otherwise, the office of assessor would be useless—he is the assessor of State and county taxes. But if it be contended that his assessment for the State will also serve for the county, and that the order of the Board of Police may be grafted on it, so as to make the assessment complete, then, we say, that the fact of such order being placed in the hands of the collector, becomes material, and for a plain reason. An assessment, it is admitted, is *essential*—so the court decides. It is essential for two reasons. First. To notify to the collector the amount which he is to collect; and Second. To notify the tax payer the amount which he is to pay. We ask, where does the collector look for his authority, but to the documents in his hands? and where does the tax payer look for the amount of his liability, but to those documents?

The case cited by adverse counsel, in the case at law, 21 Pick. 67, holds the doctrine that the purpose of the assessment is to notify the tax payer of his liability, and the court, in its opinion, recognizes the same principle. Where then is he to look? not certainly to the Act of the Legislature, nor to the act of the Board of Police, but to the assessment. On looking at that, neither the collector nor tax payer in this case could have known the amount to be collected and paid, without the order of the Board of Police was in his hands, and this, in contemplation of law, at least, made a part of the assessment, enabling both the collector and payer to ascertain by a *mere* calculation, the amount due the county. *Thurston* v. *Little*, 3 Mass. Rep. 429; *Doughty* v. *Hope*, 1 Com-

stock, 79; *Blossom* v. *Com.*, 14 Mass. 177; *Granger* v. *Parsons*, 2 Pick: 392; 21 Ib. 67.

The court, in the case at law, further said, " Under the admission in the pleadings that the Board legally made the levy, it must therefore be taken that they fixed the amount to be raised, *and took such other steps as were necessary* to authorize the tax collector to make collections; *because,* otherwise there could not have been a legal levy of the amount of the taxes. The admission in the pleadings and agreement would go to the extent of admitting the *authority of the tax-collector* to collect, so far as his authority was dependent on acts to be done by the Board of Police, *only denying that the amount of the county tax was specified in the assessor's list.*"

Unless, then, the mere order of the Board that such a per centum on the State tax should be levied, is sufficient to enable the collector to proceed, we submit that the facts as now stated in the bill, do show the illegality of the action of the collector, since, as now stated, that order *was* the only act *done* towards authorizing him to collect.

But the court held that something else was necessary to be done, for, in the above extract, its language is that the admission must be so construed as to imply " that the Board fixed the amount to be raised, and *took such other steps as were necessary* to authorize the tax-collector to make collections."

What those "*other steps*" were, may be seen from the extract I have already given from the opinion, where the language is, not only that the assessment roll, *but the order of the Board of Police,* " must be in the possession of the tax-collector."

Thus it will be seen, that in using the language in the agreed state of facts, that the Board of Police " legally made the levy," the parties themselves understood, and only intended it to be understood, that the Board had passed an order to levy a certain per centum on the State tax, and had passed such an order in pursuance of a legal power to do so. But according to the opinion of the court, the true legal import of the admission was not only that the Board had passed such an order, but had done something else essential to the authority of the tax-collector, &c., *i. e.*, that

it had placed the order in the hands of the collector, in that he had obtained possession.

Admitting the court's construction of the language to be correct, then it is apparent that a material mistake was made in the draft of the agreement, as it is positively alleged and admitted by the demurrer that neither party understood, or intended the facts to be understood in that way. For these reasons I submit that the decree of the court below should be affirmed.

FISHER, J., delivered the opinion of the court.

This is an appeal from a decree of the Chancery Court of Carroll county, overruling a demurrer to the complainant's bill.

The object of the bill was to obtain a new trial at law, on the ground that the judgment was either obtained by mistake, or affirmed in this court in consequence of a mistake in making up the record of the proceedings in the Circuit Court. The facts are briefly as follows: The complainants were sued in the Circuit Court of Carroll county, as the securities of William P. Bole, as sheriff of said county, on account of the taxes which he failed to pay into the county treasury. It appears that the case was tried upon an agreed state of facts; and the bill then proceeds to state that by mistake of the draftsman, "said agreement admits that the roll of the Board of Police of Carroll county, levying the taxes for the year 1850, was placed in the hands of said tax-collector, and was in his hands when he collected said taxes." That this admission is an error; that no such order or copy was ever placed in his hands, and that the said sheriff made said collections without any assessment roll, or order of the Board of Police of said county. It appears that the complainants prosecuted their writ of error to the judgment rendered against them, and never complained of any mistake until after the judgment was affirmed in this court.

By the exercise of ordinary diligence, the mistake could have been discovered in time to have made the proper correction in the Circuit Court. The parties must have known the facts upon which the court pronounced its judgment, and they could, by the ordinary means, certainly have made the discovery of the mistake in time to have moved for a new trial before the adjournment of the court. A bill for a new trial at law, proceeds upon the idea that

the party, owing to some circumstance which he could not control, was prevented both from obtaining a fair trial at the time and under the circumstances attending the trial, and that he was prevented from moving for a new trial before the adjournment of the court. Without this showing, or something equivalent to it, a court of equity will never interpose to grant a new trial at law.

Decree reversed, demurrer sustained, and bill dismissed.